IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSHUA L. GARDNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-3149-KHV |
| DAVID McKUNE, et al., ) | |
| ) | |
| Respondents. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Joshua L. Gardner's <u>Amended Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody</u> (Doc. #19) filed August 28, 2006. After carefully considering the parties' briefs and the underlying record, the Court overrules Gardner's motion.

**Factual Background**

On January 8, 2002, the State of Kansas charged Gardner with one count of aggravated robbery in violation of K.S.A. § 21-3427. Case Number 02-CR-48 in the District Court of Johnson County, Kansas. On April 2, 2002, the assistant district attorney amended the petition to add one count of aggravated battery or, in the alternative, one count of aggravated assault in violation of K.S.A. § 21-3410.

On April 14, 2003, after jury selection had begun, the parties entered plea negotiations. Gardner agreed to plead no contest to one count of aggravated robbery in violation of K.S.A. § 21-3427 and one count of aggravated assault in violation of K.S.A. § 21-3410. At the time, the court services officer had determined that Gardner had a criminal history score of "I." For that criminal history, the sentencing range for aggravated robbery is 55 to 61 months in prison, and the sentencing

range for aggravated assault is 11 to 13 months.[1] Defense counsel Carl Cornwell informed Gardner that the most likely total sentence for both crimes would be 59 months. At the plea hearing, Mr. Cornwell stated that pursuant to the plea negotiations, he would argue for a sentence of a total of 59 months and the State would argue for a sentence of 71 months.[2]

In response to the judge's questions, Gardner stated that he understood that by entering no contest pleas, he was giving up his rights to a trial by jury, to remain silent at subsequent stages of proceedings, to confront and cross-examine witnesses, to present witnesses of his own, and to require the State to prove its case beyond a reasonable doubt. Gardner stated that he had had the opportunity to speak with counsel and that he was satisfied with the work of his counsel. Mr. Cornwell told the judge that Gardner had suffered a head injury and sometimes had difficulty understanding things, and that Gardner's mother had helped explain things to Gardner. Gardner stated that he was not under the influence of drugs or alcohol or prescription medication and that he understood what was going on around him. The State provided a factual basis for the pleas, and Gardner agreed with it. The district court advised Gardner that based on his prior criminal record, if any, he could be sentenced to anywhere between 55 and 247 months for the aggravated robbery

---

[1] Under the Kansas Sentencing Guidelines Act, K.S.A. § 21-4701 et seq., the district court considers prior convictions and determines a criminal history score, which is a letter designation along the horizontal axis of the statutory sentencing grid; the vertical axis of the grid indicates the severity of the crime. See State v. Ivory, 273 Kan. 44, 45, 41 P.3d 781, 782 (2002). Except in limited circumstances, the Kansas Sentencing Guidelines require a sentencing judge to impose the "presumptive sentence" provided by the range on the relevant grid. K.S.A. § 21-4716(a).

The criminal history calculation greatly affects the potential sentence for an individual defendant. In order to facilitate plea negotiations, the District Court of Johnson County developed a process – which it used in this case – by which the court services office conducts a criminal history search at a reasonably early stage if either party requests it.

[2] Mr. Cornwell did not set out separate sentences for each charge.

and to 11 to 34 months for the aggravated assault, and that the sentences could be consecutive. The judge told Gardner that the government's recommendations regarding sentences were merely recommendations and that the judge could impose any sentence up to the maximum.

Before sentencing, the court services officer determined that the initial criminal history calculation was incorrect because it did not reflect a juvenile adjudication in 1998. The juvenile adjudication changed Gardner's criminal history score from "I" to "D," and resulted in a range of 89 to 100 months for the aggravated burglary charge.[3] On August 22, 2003, Gardner filed a motion to withdraw his plea based on the change in his criminal history calculation.

The district court overruled Gardner's motion to withdraw his plea. The district court acknowledged that at the plea hearing the court services officer had made "not a small mistake" when he failed to include the juvenile adjudication in Gardner's criminal history.[4] Nonetheless, the judge found that Gardner knew his own criminal history and was merely attempting to capitalize on the error in the initial court services report. Mr. Cornwell noted that Gardner had suffered a head injury, and asserted that Gardner's memory and understanding was impaired. He argued that Gardner either might not have remembered the juvenile offense or might not have understood that it would affect his criminal history. The judge rejected that argument, and noted that mental health evaluations indicated that Gardner was malingering as to the effect of the head injury. The judge

---

[3] Because the aggravated burglary charge was the "primary crime" under the Kansas Sentencing Guidelines, the change in the criminal history score did not impact the sentencing range of 11 to 13 months on the aggravated assault charge. See K.S.A. § 21-4720(b)(5) (non-base sentences are calculated in criminal history "I" column on grid.)

[4] At the plea hearing, the court services officer had reported the criminal history without obtaining information from the Kansas Bureau of Investigation. The judge noted that the KBI database is the touchstone of criminal data and record keeping for purposes of Kansas sentencing.

also rejected defense counsel's argument that Gardner might not have known that juvenile convictions are counted in criminal history, and noted that had been the case for a decade in Kansas. The judge found that Gardner had knowingly and voluntarily entered the plea agreement. The judge denied Gardner's motion to withdraw his plea and sentenced him to 94 months in prison for aggravated burglary and 12 months, concurrently, for aggravated assault.

Gardner appealed, asserting that the trial court had (1) abused its discretion when it refused to allow him to withdraw his no contest plea, and (2) erred in using a juvenile adjudication to enhance his criminal history score. The Kansas Court of Appeals affirmed Gardner's sentences, stating as follows:

> Gardner claims since he was unaware his juvenile adjudication would be used to enhance his sentence, he should have been allowed to withdraw his plea. A similar argument was brought before our Supreme Court which rejected the argument. State v. Haskins, 262 Kan. 728, 732, 942 P.2d 16 (1997) (when defendant knowingly enters plea agreement, trial court does not abuse its discretion by refusing to allow the withdrawal of plea on discovery of a juvenile adjudication that increases criminal history score).
>
> We have used the same rationale when determining a trial court did not abuse its discretion in refusing to allow a defendant to withdraw from a plea agreement when a mutual mistake was discovered in a presentence report. See State v. Baldwin, 28 Kan. App.2d 550, 18 P.3d 977, rev. denied 271 Kan. 1038 (2001); State v. Ford, 23 Kan. App.2d 248, 930 P.2d 1089 (1996).
>
> So long as there is evidence the defendant was represented by competent counsel; was not misled, coerced, mistreated, or unfairly taken advantage of; and the plea was freely and understandingly made, there is no abuse of discretion. See, e.g., Baldwin, 28 Kan. App.2d at 552.
>
> Here, Gardner does not allege any of his rights were violated, merely that he should have been allowed to withdraw his plea when he discovered his prior juvenile adjudication would be used in determining his criminal history score.
>
> The trial court did not abuse its discretion in refusing to allow Gardner to withdraw from his plea agreement.

> Gardner also challenges the constitutionality of using a prior juvenile adjudication to enhance his criminal history score. This argument fails since our Supreme Court has conclusively decided the issue against him. State v. Hitt, 273 Kan. 224, 42 P.3d 732 (2002), cert. denied 537 U.S. 1104 (2003). The Hitt court held juvenile adjudications may properly be used in determining criminal history score. 273 Kan. at 235-36.

State v. Gardner, No. 92,094, 2005 WL 638095, at *1-2 (Kan. App. Mar. 18, 2005).[5] On June 9, 2005 the Kansas Supreme Court denied review.

On May 25, 2006, Gardner filed his motion pursuant to 28 U.S.C. § 2254. On August 28, 2006, Gardner filed an amended petition raising essentially two grounds for relief: (1) he did not knowingly and voluntarily agree to plead no contest because he relied upon the incorrect criminal history report when he entered the plea agreement and (2) the use of a juvenile adjudication in calculating his criminal history violated his Sixth and Fourteenth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466, 489 (2000).

## **Standards For Habeas Petitions Under 28 U.S.C. § 2254**

Because Gardner filed his habeas petition after April 24, 1996, the provisions of The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), govern the Court's review in this case. Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). Under 28 U.S.C. § 2254, as amended by the AEDPA, the Court may not issue a writ of habeas corpus with respect to any claim which the state court adjudicated on the merits unless that adjudication resulted in a decision:

> (1) that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5] The Honorable Lee Johnson dissented, stating that through the court services officer, the district court had advised Gardner that his criminal history was an "I." Judge Johnson stated that Gardner and his attorney were misled, and that Gardner had shown good cause to withdraw the plea.

>(2) that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if (1) the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, the Court may grant habeas relief if the state court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts of a prisoner's case." Id. at 407-08. The Court may not issue a writ simply because in its independent judgment, it concludes that the state court applied clearly established federal law erroneously or incorrectly; rather the application must be objectively unreasonable. Id. at 409-11. The Court presumes that factual determinations made by the state court are correct, and petitioner bears the burden of rebutting this presumption with clear and convincing evidence. Martinez, 330 F.3d at 1262 (citing § 2254(e)(1); Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002)). This presumption does not extend to legal determinations or to mixed questions of law and fact. Id. (deferential standard of review does not apply if state court employed wrong legal standard in deciding merits of federal issue). Ultimately, review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings. Anderson v. Mullin, 327 F.3d 1148, 1152 (10th Cir. 2003).

6

**Analysis**

I.      **Denial Of Petitioner's Motion To Withdraw Plea Before Sentencing**

Gardner alleges that he did not knowingly and voluntarily enter his plea agreement because the court services officer incorrectly reported his criminal history score and, as a result, his attorney inaccurately projected the length of his sentence. In response to defendants' answer, Gardner further alleges that this advice constitutes ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments.[6]

The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty. Boykin v. Alabama, 395 U.S. 238, 242 (1969). The test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings. See Parke v. Raley, 506 U.S. 20, 35 (1992). In order to demonstrate a violation, Gardner must show that when the Kansas Court of Appeals held that he was not entitled to withdraw his plea, it acted contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court, or based its decision on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The Court has found no Supreme Court case which addresses whether a court services officer's miscalculation of a criminal history which results in an attorney inaccurately projecting the

---

[6] As explained below, the ineffective assistance claim is subsumed by and contained within the legal framework for analyzing the due process claim. Therefore, the Court does not address ineffective assistance as a separate ground for relief.

7

length of defendant's sentence violates due process so as to invalidate a guilty or no contest plea. Cf. Kidd v. Bruce, No. 03-3354-JWL, 2004 WL 303549, at *3 (D. Kan. Feb. 13, 2004) (Supreme Court has not conclusively determined whether attorney's miscalculation of defendant's sentence violates substantive due process so as to invalidate guilty plea). As Judge Lungstrum noted in Kidd, however, the Supreme Court in Hill v. Lockhart, supra, set out a framework which guides the Court's analysis of this issue as follows:

> In Hill, petitioner claimed that his plea was involuntary as a result of ineffective assistance of counsel because his attorney supplied him with erroneous information about parole eligibility. 474 U.S. at 56. The Court explained that where a "defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970). As such, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'" Id. at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). In the end, the Hill Court concluded that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 58. "In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence. . . . The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. 58-59. In applying this framework, the Hill Court found it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because . . . [the court] conclude[d] that petitioner's allegations [were] insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.'" Id. at 60. Thus, the Supreme Court has not analyzed under what conditions an attorney's miscalculation or erroneous estimate as to a defendant's sentence would fall below an objective standard of reasonableness. Earlier decisions from the Supreme Court, however, suggest that there is room for miscalculations made in good-faith. In McMann, the Supreme Court explained that when a criminal defendant waives trial by entering a plea agreement, he or she assumes "the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." 379 U.S. at 770 (1970); see also Fields, 277 F.3d at 1214. Thus, the requirement that a defendant knowingly and intelligently enter a plea agreement does

8

> not require that "all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." Id.

Kidd, 2004 WL 303549, at *3.

Here, all parties admit that the court services officer incorrectly calculated Gardner's criminal history score. As a result, Gardner's attorney incorrectly estimated the length of his sentence under the plea agreement. No party suggests that the court services officer or Mr. Cornwell made the calculation in bad faith. The Kansas Court of Appeals found that Gardner had voluntarily entered his plea despite Mr. Cornwell's erroneous advice regarding the ultimate sentence. The limited question on habeas review is whether the state court's adjudication was contrary to, or an unreasonable application of, controlling federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

To satisfy the "contrary to" clause, the state court's decision must arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or decide a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13 (O'Connor, J., concurring). As noted above, the Supreme Court has not squarely addressed the conditions under which an attorney's erroneous sentence estimate – based on a court service officer's mistaken criminal history calculation – renders the plea involuntary. In the absence of such an opinion, the state court adjudication cannot be contrary to established federal law under Section 2254.

To satisfy the "unreasonable application" clause, Gardner must demonstrate that the state court unreasonably applied Supreme Court precedent. Id. at 413. The Supreme Court has set forth only a general legal framework for addressing whether an attorney's miscalculation invalidates a plea, but has suggested that the law affords some room for miscalculations made in good faith. See

9

McMann, 397 U.S. at 770 (defendant who waives trial by entering plea assumes inherent risk that good faith evaluations of reasonably competent attorney may be mistaken as to facts or as to what court's judgment might be on given facts). The Court cannot find that the state court's adjudication was an unreasonable application of federal law as determined by the Supreme Court.

While Section 2254 focuses on federal law as determined by the Supreme Court, federal courts have an independent obligation to determine what the law is. Kidd, 2004 WL 303549, at *5 (citing Williams, 529 U.S. at 382). Thus, absent further guidance from the Supreme Court as to what constitutes an objectively unreasonable performance that would invalidate a plea agreement, the Court relies upon Tenth Circuit law. See Phillips v. Iowa, 185 F. Supp.2d 992, 1018 (N.D. Iowa 2002) (relying on Eight Circuit precedent in reviewing claim under AEDPA in absence of further guidance from Supreme Court).

Generally, the Tenth Circuit has found that a plea may be rendered involuntary when an attorney materially misinforms defendant of the consequences of the plea. Laycock v. State of New Mexico, 880 F.2d 1184, 1186 (10th Cir. 1989). The Tenth Circuit has identified two situations where "material misinformation" as to the consequences of a plea violates due process: (1) when an attorney falsely represents that promises or guarantees exist, see Fields v. Gibson, 277 F.3d 1203, 1213 (10th Cir. 2002); and (2) when an attorney makes unfair representations concerning a judge's probable leniency, see United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990). The Tenth Circuit, however, has held that "[a]n erroneous sentence estimate by defense counsel does not render a plea involuntary. . . . [a]nd a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." Fields, 277 F.3d at 1214 (quoting Wellnitz v. Page, 420 F.2d 935, 936-37 (10th Cir. 1970)); see United States v. Williams, 118 F.3d 717, 718 (10th Cir. 1997) (miscalculation or erroneous sentence estimate by defense counsel not

10

constitutionally deficient performance.)  Thus, the relevant question is whether Mr. Cornwells's advice, based on an inaccurate criminal history calculation, fell within one of the two categories of "material misinformation" which would render a plea invalid, or whether the advice was simply a miscalculation or erroneous sentence estimation.

Gardner does not allege that Mr. Cornwell made unfair representations concerning the judge's probable leniency.  Also, Gardner has not alleged that Mr. Cornwell falsely represented that the state court or prosecution promised Gardner a specific sentence.  The more difficult question is whether counsel's advice concerning Gardner's criminal history rose to the level of a promise or guarantee by counsel that coerced him into entering a no contest plea.  The record indicates that Mr. Cornwell relied upon the court services officer's miscalculation of Gardner's criminal history in informing Gardner that he would receive a substantially lower term of incarceration than the trial court eventually imposed.  Unlike in Kidd, the record here suggests that Gardner understood that his advice was tantamount to a guarantee.  Counsel told the trial court that he did not check with the juvenile court clerk's office about prior adjudications because "the parties knew that this "["I"] was, in fact, the criminal history."  Without more, the Court might find that Mr. Cornwell's advice coerced Gardner into accepting the no contest plea.  The trial court, however, found that Gardner "knew very well that he had a problem in his criminal history," and that Gardner did not tell Mr. Cornwell about his juvenile adjudication.  Thus, the Court finds that it was not an unreasonable application of federal law for the Kansas Court of Appeals to characterize Mr. Cornwell's advice as a "mutual mistake" between counsel and the court which did not undermine the validity of the plea agreement.

In addition, before it accepted the plea, the court advised Gardner that he could be sentenced to incarceration for 55 to 247 months on the aggravated robbery charge alone.  The judge also

11

informed Gardner that the plea negotiations were only a recommendation, and that the court could impose any sentence up to the maximum. The judge asked Gardner whether any promises had been made to induce his plea, and he responded that there were none. The colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Fields, 277 F.3d at 1214. The colloquy is an important safeguard that protects defendants from incompetent counsel or misunderstandings, thus ensuring that defendant understands the consequences of a guilty plea. Id. If Gardner initially misunderstood the possibility of receiving a sentence longer than 59 or 71 months, the colloquy alerted him to that fact in no uncertain terms. Id. In factually analogous situations, where counsel miscalculated or erroneously estimated the length of a defendant's sentence, the Tenth Circuit has consistently characterized such error as a miscalculation that neither renders a plea involuntary nor counsel's performance deficient. Kidd, 2004 WL 303549, at *5 (counsel's assurance that defendant would not receive "much of a sentence" did not rise to level of constitutionally deficient counsel where defendant actually received 12 years,); Wellnitz, 420 F.2d 935 (guilty plea voluntary even though counsel informed defendant that he would get 25 years and defendant actually received 100 years); United States v. Zambrano-Sanchez, Nos. 98-3227, 98-3283, 1999 WL 339694, at *3 (10th Cir. May 28, 1999) (counsel allegedly estimated sentence of five to six and one-half years and defendant received 151months); see also United States v. Contreras-Armendariz, No. 05-5483, 2006 WL 3488784, at *2 (6th Cir. Dec. 4, 2006) (rejecting claim that plea was not knowing and voluntary because defendant believed criminal history category was lower than that under which he was sentenced; at plea hearing, court reviewed rights that defendant was waiving, determined that defendant understood consequences of plea, and that plea was voluntary). The Court cannot conclude that the state court's adjudication was contrary to or an unreasonable application of federal law as determined by the Supreme Court and elaborated upon by the Tenth

Circuit.

**II.    Use Of Juvenile Adjudication In Criminal History Score**

Gardner argues that the rulings of the Johnson County District Court and the Kansas Court of Appeals violate his rights under the Sixth and Fourteenth Amendments. On direct appeal, the Kansas Court of Appeals held as follows:

> Gardner also challenges the constitutionality of using a prior juvenile adjudication to enhance his criminal history score. This argument fails since our Supreme Court has conclusively decided the issue against him. State v. Hitt, 273 Kan. 224, 42 P.3d 732 (2002), cert. denied 537 U.S. 1104 (2003). The Hitt court held juvenile adjudications may properly be used in determining criminal history score. 273 Kan. at 235-36.

Gardner v. McKune, No. 92,094, 2005 WL 638095, at *2 (Kan. App. March 18, 2005). Gardner argues that this ruling is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In particular, Gardner maintains that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the state must charge in an indictment and prove to a jury the facts related to juvenile adjudications.

Under the Kansas Sentencing Guidelines, criminal history is not an enhancement, but is built into the calculation of a presumptive sentence. State v. Ivory, 273 Kan. at 46, 41 P.3d at 782. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court created an explicit exception to Apprendi and its progeny by allowing a judge to determine a fact of prior conviction without violating a defendant's Sixth Amendment rights. United States v. Taylor, 413 F.3d 1146, 1158 n.5 (10th Cir. 2005), cert. denied, 127 S. Ct. 228 (2006). In Almendarez-Torres, the Supreme Court held that because recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," 523 U.S. at 243, and "as typical a sentencing factor as one might imagine," 523 U.S. at 230, the Constitution does not require the government to charge

13

or prove to a jury either the existence of prior convictions or certain facts related to those convictions such as their classification as "violent felonies." United States v. Moore, 401 F.3d 1220, 1221 (10th Cir. 2005); see United States v. Pineda-Rodriguez, 133 Fed. Appx. 455, 457-58 (10th Cir. May 4, 2005). Under Almendarez-Torres, a district court can make findings with respect to a defendant's criminal history, be they findings as to the fact of the prior convictions or the nature of those convictions. United States v. Williams, 410 F.3d 397, 402 (7th Cir. 2005); see Pineda-Rodriguez, 133 Fed. Appx. at 458-59.[7] In sum, the state was not required to charge or prove to a jury the facts related to Gardner's prior convictions. See Moore, 401 F.3d at 1221.

The state district court's use of Gardner's prior juvenile adjudication was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent. Instead, the use of juvenile adjudications is consistent with Apprendi, Blakely, Booker and Almendarez-Torres. Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006); United States v. Burge, 407 F.3d 1183, 1190 (11th Cir.), cert. denied, 126 S.Ct. 551 (2005); United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003), cert. denied, 540 U.S. 1150 (2004); United States v. Smalley, 294 F.3d 1030, 1032-33 (8th Cir. 2002), cert. denied, 537 U.S. 1114 (2003); Hobbs v. McKune, No. 06-3133-RDR, 2006 WL 3246772, at *4-5 (D. Kan. Nov. 8, 2006); Jones v. Roberts, No. 06-3100-SAC, 2006 WL 2989237, at *5 (D. Kan. Oct. 19, 2006); Hernandez v. Bruce, No. 05-3237-JAR, 2006 WL

---

[7] In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court did not overrule Almendarez-Torres to the fact of prior convictions. See Cunningham v. California, --- U.S. ----, 127 S. Ct. 856, 864 (2007). In a concurring opinion in Shepard, Justice Thomas noted that Almendarez-Torres "has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided." Shepard, 544 U.S. at 28. Despite Justice Thomas' statement, the Court is bound to continue to follow Almendarez-Torres. See Moore, 401 F.3d at 1224. The Tenth Circuit has held that Shepard, United States v. Booker, 534 U.S. 220 (2005), Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi have left Almendarez-Torres undisturbed. See Williams, 410 F.3d at 402; Moore, 401 F.3d at 1221, 1224; Pineda-Rodriguez, 133 Fed. Appx. at 458 n.5.

314352, at *3-4 (D. Kan. Jan. 26, 2006).[8]  Accordingly, the Court overrules Gardner's petition for a writ of habeas corpus.

**IT IS THEREFORE ORDERED** that Joshua L. Gardner's <u>Amended Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody</u> (Doc. #19) filed August 28, 2006 be and hereby is **OVERRULED**.

Dated this 21st day of March, 2007 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge

---

[8] Initially, the Ninth Circuit held that juvenile adjudications which do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof do not fall within <u>Apprendi</u>'s "prior conviction" exception.  <u>See</u> <u>United States v. Tighe</u>, 266 F.3d 1187, 1194 (9th Cir. 2001). Recently, however, the Ninth Circuit held in the context of a state habeas petition as follows:

> Although we are not suggesting <u>Tighe</u> was incorrectly decided, as some of these varying interpretations of <u>Apprendi</u> suggest, the opinion does not represent clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). . . . [I]n the face of authority directly contrary to <u>Tighe</u>, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

<u>Boyd</u>, 467 F.3d at 1152.